The first case this morning is 2010-1481, Andersen Corp v. Pella Corp. Mr. Little, may I have you ready? Good morning, Your Honors. May it please the Court, The clear error of the District Court below was in failing to recognize that the indemnity provision of the 2003 Supply Agreement between Pella and Gore was a product of negotiations between these parties that had started with the language of UCC-2312-3. UCC-2312-3 refers to a rightful claim of infringement. Gore proposed, initially, an indemnity provision that incorporated UCC-2312-3. Pella wanted to expand Gore's indemnity obligation under UCC-2312-3 to apply to all Gore-supplied material, not just off-the-shelf goods that it might purchase from Gore. Gore, on the other hand, wanted to limit its obligation to, quote, infringing material, and not extend it to claims related to Gore's contribution to the Pella vivid view products. If it was something that Gore had contributed, it was the basis of an infringement claim, Gore didn't want to be obligated to indemnify Pella. And the compromise they arrived at was the language of the indemnity provision in the Supply Agreement. Gore will indemnify and hold Pella for, hold harmless Pella for all losses and expenses. Mr. Little, I guess, before the, in the District Court, well, Magistrate, I guess, and currently if I'm wrong, but both parties said that the court did not need to look to extrinsic evidence, isn't that correct? That's correct. And that, you know, you could come to a result in this case just looking at the words material infringing. Do you now back off of that? I mean, I realize you're addressing the way the District Court ruled, but do you still think we can just look at the language of the contract provision, Paragraph 9? I think, I think... Without looking at any of the negotiations or the UCC provision or anything? I think you can look at the, at the language of Paragraph 9 and conclude, as we have urged the District Court and we've urged this court to do, that infringing material, or material infringing third-party intellectual property rights, against the background of other indemnity provisions involving patent infringement, is clear. Do you think your position is stronger just on the basis of the language of the contract, or do you think it becomes stronger when one looks to the extrinsic material in negotiations? Your Honor, if one looks to the negotiations, I think it does strengthen Pella's position. I think the negotiations between these parties started out with the UCC, started out with 2312.3. The District Court, when it examined its extrinsic evidence, looked at provisions that had not been considered by the parties. The District Court looked at foreign supplier agreements that Pella had used with other suppliers. Well, this was Pella's first dealing with Gore. They had no history of being a supplier. And there were no foreign supplier agreements under consideration in these negotiations. The foreign supplier agreements came into play at the deposition of Pella's general counsel in the course of resolving this dispute. They weren't part of the underlying negotiations. In addition, the District Court looked at the trademark license that Pella had used when it was having one of its suppliers or another party use Pella's trademarks in connection with goods that it sold. That provision, that trademark license, was in fact included in some documents that were exchanged between the parties. It was never considered for this paragraph 9. And it was immediately stricken and disregarded by both parties early on in the negotiations because there was no opportunity for Gore to be using Pella's trademarks or Pella to be using Gore's trademarks in connection with this agreement. Going back to the term material infringing, and I realize that the parties pretty much conceded an ambiguity there. Am I correct on that? Okay. Now, when I look at the term infringing, it seems to me that there's finality there. I mean, how can you say that a material is infringing if there's been no court determination or legal determination of infringement? Your Honor, again, I would refer the court back to UCC 2312.3, in which the language that's used is rightful claim. And the decisions of other courts, two of which I'll refer the court to, Cummer v. Hydromatic and 84 Lumber Company, which are cited in our briefs, indicate that a rightful claim is not a determination of infringement. It's not finality. In fact, the 84 Lumber Company case says that a rightful claim falls somewhere between purely frivolous at one end and claims where liability has been proven. Now, keep in mind, Your Honors, that these parties started out, that was the base position, was 2312.3, which had rightful claim. And then in negotiating back and forth, Pella, as I said, wanted to make sure it wasn't limiting itself to Gore's off-the-shelf products, and Gore wanted to make sure that it wasn't on the hook for any infringement of which Pella was accused, even if it didn't include Gore's contribution to the vivid new product that Pella will sell. Let me ask you, were you finished responding to Judge Raines' question? Unfortunately, I could probably go on and on. Let me change the factual scenario here for a moment. Assume for the moment that there had never been a lawsuit by Anderson. But assume instead Anderson had sent a letter to Pella saying, Your product infringes, and so forth. And the parties went back and forth and retained counsel. Pella retained counsel. There were discussions over a period of six to eight months, and lawyers looked at various things and so forth, and legal costs were incurred. At the end of that period, Anderson decided not to press his case, and that was the end of it, or there was some kind of settlement. Would you say that under those circumstances, Gore should reimburse? Yes, Your Honor. If those had been the circumstances. If those had been the circumstances, Your Honor. Any claim of infringement brought against Pella based upon Gore's contribution to Pella's vivid new product was the responsibility of Gore to indemnify. Gore and Pella had negotiated a provision which, if it had been drafted differently, probably wouldn't have been presented to the district court or this court. But that provision, first of all, it talks about infringing material. If you're going to take a strict legalistic approach, material can't infringe. Parties infringe. And they started from the position that there was a rightful claim of infringement for which one party had to indemnify the other. And they ended up with a paragraph that referred to infringing material. Our position is that until the material was licensed, until Pella and Gore took a license from Anderson and resolved the issue, they were unlicensed users of a patented product, and therefore it was infringing material. Why was the term all claims then used? I mean, you're using it here before as an argument. That's not what the Indemnification Clause says. The Indemnification Clause refers to all losses and expenses, including reasonable attorney's fees, resulting from Gore's manufacture or supply of material infringing third-party intellectual property rights. From the moment that Gore and Pella were put on notice that Anderson believed that there was an infringement until there was a resolution, Pella and Gore were selling infringing material. What about the presumption of innocence? Doesn't that apply? You're saying if somebody makes some sort of claim of infringement, we conclude that there's infringement until somebody proves otherwise? Isn't that kind of backwards from the way the system works? I mean, just because someone makes an allegation of infringement, that doesn't mean there's infringement until one is adjudicated to be non-infringing, right? As against Anderson, you're correct, Your Honor. But as a relationship between the parties, again, I would refer the court back to the law interpreting the term rightful claim of infringement as it appears in the UCC. But the UCC uses the word claim, and as Judge Rayna pointed out, the whole difficulty we're having here is the absence of the word claim in the provision we're dealing with. Well, Your Honor, the word claim is absent from that provision. But there are losses and expenses, including attorney's fees, which were incurred by Pella in the context of defending against an allegation of infringement that was brought by him. Well, I don't think anybody disputes that. The question before us is whether you're entitled under this language in your agreement to get reimbursed for that. I mean, right? I mean, so the question is whether infringing covers claims for infringement, right? That is the question, Your Honor. And for the converse to be true, for the court to affirm the district court and say there had to be a finding of infringement would completely subvert the relationship of these parties. It would have meant that it would have been Pella's interest at the settlement conference in August of 2009 to either refuse to settle or apparently to refuse to settle to go to trial and be found to be an infringer or to have included in the settlement agreement will stipulate to infringement, which is not going to happen. Well, that's kind of a public policy. That's your policy argument, right? That is a policy argument, and here they were strongly encouraged by the magistrate judge to enter into a settlement agreement with Anderson, the third party, and they had to resolve this issue or go to trial and be found to infringe in order to recover the $4 million they expended in a defense in this case. But isn't that the consequence, though, of the language of the Provision 9? I mean, it is infringe. I think if anyone hears that, they think infringe, all right, that's stating the fact of infringement. And I guess the word infringing as a gerund can be used as a noun or an adjective or an adverb seems to say there is actual infringement, not just an allegation or a claim of infringement. Your Honor, I would respectfully disagree. We've already in this case, in this court, had a disagreement over the meaning of final and the determination as to whether this appeal could even be heard. In the court, the Lord took a literal reading of final. This court read final in the context of the way orders come up on appeal. And the same thing can be said with infringement in this particular case. If you look at the context of the negotiations of these parties, where they were trying to arrange for one party to indemnify the other in the event of a claim of infringement, and you look at where they started, which was 2, 3, 12, 3, as opposed to what the district court looked at, which were agreements that weren't even considered in indemnity provisions that were not part of these agreements, I think you have to conclude that infringement meant any claim of infringement, and the claim of infringement lasted until a license was issued by amnesty. Okay. We're into your rebuttal time. Thank you, Your Honor. Thank you. We'll hear from Mr. Gallagher now. Good morning. May it please the Court. Just to follow up on a point you were making, Judge Schall, I think we have to turn back to the actual language that two sophisticated parties arrived at after negotiating for months. Yeah, the problem you have is that you want us to affirm a magistrate judge on that language, ambiguous. Well, yes, Your Honor, but under Delaware law, what the parties argued regarding ambiguity below is irrelevant to consideration when it's on appeal under the EGLE case. But if we go back to the language that the parties agreed to, court will indemnify whole harmless Peller for losses and expenses, including attorney's fees, resulting from Boar's manufacturer's supply of material infringing third-party intellectual property rights. It doesn't say claim to be infringing, accused of infringing, or allegedly infringing. For Peller to prevail, this Court would have to impermissibly add extraneous terms to paragraph 9. Moreover, the argument that... Are you arguing that we should not consider extrinsic evidence? Excuse me? Are you arguing that we should not consider extrinsic evidence? Whether it's considered or not, I think we arrived at the same decision that the magistrate was in fact proper and holding that for Peller to be able to claim indemnification, there must have been a finding of infringement. Let me ask you, you said there had to be a finding of infringement. You certainly say that there would be such a finding if there was a judgment of a court, that there was infringement. You'd agree that that would be a finding of infringement? Yes, Your Honor. Supposing, though, and this is something we often see, supposing in the course of a patent infringement litigation, claim construction becomes an issue, and the District Court renders a claim construction ruling. And the defendant says, I stipulate that I infringe under that particular claim construction. However, I think that claim construction is wrong, or I think under that construction the patent is invalid. And there's subsequent proceedings to determine the correctness or not of the claim construction. Would a stipulation like that also satisfy the requirements of paragraph 9 in your view? I don't believe so, Your Honor. Because one of the arguments advanced below was there could not be any infringement of the asserted claim because the patent was invalid. So, if there was a concession of, okay, we infringe this valid patent, I think, yes, then identification would apply. But once again, this is the agreement the parties negotiated. Keller cannot come back eight years after the fact and say, okay, let's start rewriting the contract. Okay, let's start using UCC 2-312 as a proxy. During negotiations, Gore offered to indemnify Peller against any claim of infringement under the UCC. During those negotiations, Peller rejected in its entirety Gore's warranty against... Shouldn't we assume that Gore was acting reasonably and wouldn't a reasonable person entering this kind of agreement not want to force every issue to litigation, not want to create a scenario whereby Peller's going to refuse to sign off on any settlement because that's going to be the distinction between whether or not they get their fees or not. So, can't we assume that Gore would have acted reasonably and under that assumption, can't we assume that it would not have wanted a settlement versus an adjudication to be the tip-off for whether or not fees are paid? I think Gore is acting reasonable in the position it's taken. The parties were well aware of Gore's position during negotiations and prior to the commencement of Anderson's suit that a finding of infringement was going to be the only thing that triggered Peller's right to seek indemnification from Gore. These are two sophisticated parties that were represented by counsel. This is the language they agreed to. Material infringement. I appreciate that. Something you said in response to Judge Schall prompted a question in my mind. You say the main issue here would have been validity. So, let's assume the parties get to adjudication and the judge says, I'm not going to waste my time on Markman and claim construction and infringement. I'm going to go straight to your validity argument. And let's assume he grants judgment on the validity question. There's never a finding of infringement or non-infringement. Would you suggest that attorney's fees would be paid in that circumstances or still not paid because there's not a determination on infringement, it's just validity? If I understand your question, Judge Probst, there was a finding below that the patent was invalid? Yeah, but no finding of actual infringement because the finding... Your Honor, the court's well aware you can't infringe an invalid patent. Under your hypothetical, Judge Schall's hypothetical, no, Gore would not be obligated to indemnify Teller under that hypothetical. Once again, this is the language... It's not as if we're dealing with, you know, two unsophisticated parties or one sophisticated party and an individual. There are two sophisticated companies represented by counsel. This is the agreement they have entered into. Gore offered to indemnify Teller against claims of infringement. Teller refused, rejected Gore's offer and instead proposed the material infringing language that's now in dispute. Mr. Gardner, look, take out for the moment the question of validity. The judge comes down with claim construction. The defendant says, I infringe under that claim construction and I'm going to appeal. Then what happens is the parties never... They settle the case after that. So what you're left with is a settlement but a stipulation on the record of infringement under a particular claim construction. What would the situation be there? I think we're dealing a little closer, but I... Not this case, I realize, but... I think under your hypothetical, if one of the parties conceded infringement... Under a particular claim construction. Under a particular claim construction and that was the last say on the matter until they settled, I think it would be closer. At that point, I think there would be a more compelling argument that indemnification was required. We could just go to... Let me ask you this question. Suppose in Section 9, right after the statement material infringing third-party intellectual property rights, let's say there was a comma and it cited the UCC provision that your opponent has brought up. Would that make a difference? Would you be liable to indemnify in that case? If we included indemnification under UCC, 2-312. A comma in a citation to the UCC provision. Under the way... Under the records below, I do not believe so, because in interpreting UCC 2-312 as set forth in the 84 lumber case cited by Pella, to determine whether or not there is a quote-unquote rightful claim of infringement, there has to be some comparison between the allegedly infringing products and the asserted patents. Here, there was no finding whatsoever below on whether or not any of the asserted products satisfied any of the limitations of the asserted claims. In fact... In that situation, wouldn't the fact that you settled the case in order to stop a potential infringement action, shouldn't that be viewed as extrinsic evidence that there was a rightful claim? I don't believe you could make the jump, Your Honor, from settlement to any sort of binding with respect to the underlying infringement allegations. You wouldn't settle a claim that has no basis in law where that's unreasonable. Well, parties settle infringement actions for all sorts of reasons, irrespective of the strength of the infringement allegations made by the patentee. So, I respectfully disagree that you can make that leap just because there had been a settlement that, oh, we have to give some credence to the allegations set forth in the complaint. Once again, down below, the parties vigorously contested the issue of infringement. For over two years, there is no infringement. So, if Section 9 did have a citation to the UCC, to 2-312, then probably what we'd be arguing today is a rightful claim, whether there was a rightful claim. Is that correct? Yes. Okay. So, if that's the case, and you've also argued other extrinsic evidence before us, then why wouldn't we consider 3-2-312 as extrinsic evidence in order to find that maybe what we should be arguing here is whether there's a rightful claim of a third party? If I understand the hypothetical, Your Honor, I think we cannot proceed as far as you would like. This Court does not make findings of infringement on the first instance, on appeal. Down below, there were no findings of infringement, no findings that any of these 30 claims satisfy any of the elements. But we do make a finding as to the interpretation, and we can make a finding as to the interpretation of what infringing means under Section 9, and if we apply UCC 2-312 and say that the term rightful claim applies in this situation, then why couldn't we just simply reverse and say that, have the District Court review this and determine whether there's a rightful claim of a third party, whether Anderson's claim was a rightful claim? I'm a bit confused, and I apologize, Your Honor. Is this the hypothetical in which you are inserting comma pursuant to UCC? Yes. Under that hypothetical, I think, you know, if the Court remanded, there would have to be factual findings down below whether or not Anderson's claim constitutes a rightful claim of infringement under the UCC. But once again, Your Honor, Pellock was offered that protection and refused. Moreover, there are questions whether, let's assume that the UCC does apply. There are other factual issues that come into play. First of all, whether Gore is a merchant regularly dealing in goods of this kind. It's a factual dispute that has not been resolved below. To the extent to which Pella supplied specifications to Gore's mesh fabric, if Pella supplied specifications for the mesh fabric it purchased from Gore, Pella would be obligated under the UCC to identify and hold harmless Gore. So if the UCC applied and Pella supplied specifications, this indemnification claim that Pella is advancing to Gore would boomerang right back to Pella's lap making Pella essentially responsible for whatever monetary damage it's seeking from Gore under the UCC. So once again, you know, I appreciate the hypothetical, Your Honor, but I think if we look at the position of the parties during negotiations, Pella cannot retroactively come back and say, well, we're entitled to indemnification for a rightful claim of infringement. That's not what the language of the paragraph 9 says. It would require this Court to add extraneous terms to the last sentence,  law of Delaware. You just don't write the agreement and add extraneous terms. Moreover, this issue was raised more than one year before Anderson filed suit. Gore put Pella on notice. Look, this is what paragraph 9 says. You are only going to be indemnified if there is a finding of infringement. We will defend you and incur those expenses. Pella rejected those overtures and went forth after the complaint was filed knowing Gore's position on the indemnification clause retained a separate law firm to represent it going forward. That firm had over 85 attorneys and staff incur over $4 million in fees and expenses. We had disputed the reasonableness of Pella's demand for $4 million below. The Court below did not rule on our arguments regarding whether it was reasonable to have these 85 attorneys incur all the expenses and fees. At the very least, this Court cannot rule on whether that claim was reasonable. Is there a supply agreement presently in place between Gore and Pella? There was a new supply agreement entered into between Gore and Pella when the case was settled and dismissed with prejudice below. I believe it was September 23, 2009. So the relationship continues? Subject to this little dispute. Subject to this little dispute. If you turn to that 2009 agreement, there is also an indemnification clause there. In that particular clause, the parties agreed that Gore would indemnify Pella against claims of infringement. We're getting into outside the record. That is in the record, Your Honor. That is in the record? It is in the record. If there are any further questions? Thank you. Mr. Little, you have a couple minutes left. I'll be very brief, Your Honor. One of the things that Gore has emphasized throughout is that Pella was aware of Gore's position after this paragraph was agreed to. Gore was also aware of Pella's position throughout this. And counsel made the observation during his argument that cases settle for all sorts of reasons. Well, if the court is going to look to extrinsic evidence to interpret this contract, it should look to, what's in the record, Gore's efforts to take over the defense of this case. To say, we will defend you. We will indemnify you in the event of a finding of liability. You don't have to indemnify them for anything other than attorney's fees if there's no finding of liability. But we will defend you. Now, given the amount of money that patent infringement defense costs, why would they have taken that position? They would take over the defense if they would pay for the defense if they didn't understand that they had an obligation to pay for the defense as well as indemnity and to pay for Pella's own attorneys as opposed to one law firm representing them if they didn't understand that the provision meant what Pella now says it meant. Pella rejected 2312.3 for exactly the reasons that were described by counsel. It said we want more than 2312.3 supplies and then Gore responded by saying fine, but we won't be on the hook for every claim of infringement made against you if it doesn't involve our products. And as a consequence, they went forward with the agreement as written. But from the start, they were starting for a position of you will pay for our defense. You will pay for our attorneys and you will indemnify us in the event of a loss. They were never considering these other agreements which Magistrate Judge Noel relied upon in reaching this decision. Thank you for your argument. We thank both counsel. The case is submitted.